## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

EMBRY JAY LOFTIS,

        Petitioner,

v.

                                        Case No. 14-CV-19-RAW-KEW

MICHAEL J. HUNTER,
Attorney General of Oklahoma,[1]

        Respondent.

### OPINION AND ORDER

This matter comes before the Court on a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner Embry Jay Loftis ("Loftis") is a prisoner proceeding *pro se*. He was previously in the custody of the Oklahoma Department of Corrections ("ODOC") and confined in the Lawton Correctional Facility in Lawton, Oklahoma. He challenges his convictions and sentences in Carter County District Court for Unlawful Possession of a Controlled Dangerous Substance (CF-2009-112) and Reckless Driving, Attempting to Elude a Police Officer, and Driving While Suspended (CM-2009-193). After a jury trial, the court sentenced Loftis to forty (40) years imprisonment. For the reasons set forth below, Loftis's Petition for Writ of Habeas Corpus [Dkt. No. 1] is **DENIED**.

---

[1] Petitioner has been released from custody. The proper respondent is Michael J. Hunter, Attorney General of the State of Oklahoma. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Tenorio v. High Hawk*, 350 F.Supp.3d 960, 965-966 (D. Colo. Nov. 29, 2018) (holding proper respondent in habeas case where petitioner challenges form of custody other than physical confinement is entity or person who exercises legal control with respect to challenged custody). The Clerk of Court shall note this substitution on the record.

## STATEMENT OF FACTS[2]

Corporal Brice Glen Woolly of the Ardmore, Oklahoma Police Department, testified at trial that on March 9, 2009, he received a dispatch call of a citizen-reported reckless driver in a two-tone brown older-model pickup truck. Woolly saw a truck matching that description being driven erratically and at a "very high rate of speed" not far from the location of the citizen report. Officer Woolly followed the vehicle, which he believed to be the one described in the dispatch. After turning a corner, Woolly saw the truck stopped in the roadway. He observed a black male in the driver's seat of the truck and another black male standing outside the vehicle, leaning into the driver's seat window. Woolly activated the lights on his marked police car, pulled behind the truck, and exited his vehicle. He heard the driver of the truck yell "mother fucker." The driver then "hit the gas and took off." Woolly returned to his vehicle, turned on his siren, and followed the truck, which continued driving erratically at a high rate of speed. The truck made approximately four turns, then stopped on a residential street. The driver got out of his vehicle before Woolly had even stopped his car. Woolly exited his vehicle and ordered Loftis to "get on the ground." Despite Woolly's multiple orders, Loftis did not comply until Woolly turned on his taser and told Loftis he would tase him if he did not get on the ground. Loftis then complied.[3]

---

[2] Summarized from select pages of the trial transcript submitted by the State of Oklahoma as an attachment to the Response to the Petition for Writ of Habeas Corpus. Dkt. No. 57-9 at 8-61.

[3] Woolly testified that in addition to Loftis and him, four or five of Loftis's family members were standing outside, near the curb. The family members were "yelling, cussing, causing problems with me, trying to keep me from detaining the driver." At one point, Woolly was surrounded. At least two of the family members threatened Woolly with physical harm if they did not stop "[messing] with their brother." Woolly further recalled that this was not a typical police stop. In addition to drawing his taser, Woolly also drew his pistol to prevent the family members from "advancing" on him. He called for backup. Eventually four other officers arrived at the scene to assist Woolly. In total, it took between five and ten minutes for Woolly, then with assistance, to secure the scene.

Officer Woolly identified the driver of the truck as the defendant, Embry Loftis. After securing the scene, Officer Woolly conducted an inventory of the truck. Woolly and another officer, Ragland, found a plastic bag containing a one-inch, white, rocklike substance. Woolly recognized it to be crack cocaine. In continuing the inventory of the vehicle, Woolly picked up a folded t-shirt and another bag resembling crack cocaine fell out onto the seat of the truck. Officer Woolly retrieved his camera from his patrol car and photographed the suspected drugs. Woolly placed the evidence in his pocket, and it remained there until he secured it in the trunk of the police vehicle. Field testing indicated the samples contained cocaine base. Woolly later packaged the evidence for transfer and testing by the Oklahoma State Bureau of Investigation ("OSBI"). Dkt. 57-9 at 3-41 (Woolly testimony).

The laboratory technician who tested the substances in the baggies testified at trial. Testing revealed the substances were cocaine. One bag contained 2.81 grams of cocaine, the other contained 2.31 grams. Dkt. 57-9, 55-61.

## PROCEDURAL HISTORY

### PROCEEDINGS IN STATE COURT

With assistance of counsel, Loftis filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA") arguing his conviction and sentence should be overturned because:

I.    The exclusion of defense witnesses prevented Loftis from presenting a complete defense;

II.   The trial court did not ensure that Loftis was competent to represent himself or that his decision to represent himself in the trial court was voluntary;

III.  The trial court erred by permitting the jury to enhance punishment with two prior convictions which were part of the same transaction;

IV.   The second-stage jury instructions were not part of the trial record, depriving Loftis of his right to fully appeal the second stage of his trial and requiring sentence modification;

V.       Prosecutorial misconduct during closing arguments deprived Loftis of a fair trial;

VI.      Insufficient evidence supported the conviction for possession of cocaine;

VII.     Loftis should be granted relief based on cumulative error; and

VIII.    The trial court erred when it ordered Loftis's sentences to run consecutively.

Dkt. No. 57-1.

The OCCA affirmed Loftis's conviction finding 1) the trial court's denial of witness testimony was error "harmless beyond a reasonable doubt;" 2) Loftis's choice to represent himself was made "knowingly, intelligently and voluntarily;" 3) the trial court abused its discretion in allowing both 1998 convictions to be considered by the jury for purposes of enhancement; 4) the trial court's failure to include written second stage jury instructions was error "harmless beyond a reasonable doubt" as the trial court read the instructions aloud, creating an "adequate record" from which Loftis was able to base his appeal; 5) the prosecutor's closing argument "improperly and unmistakably called the jury's attention that Loftis did not serve his full sentence on his prior conviction," resulting in "plain error which affected the jury's decision in sentencing;" 6) sufficient evidence existed to support Loftis's drug conviction beyond a reasonable doubt; 7) cumulative trial errors did not warrant a new trial or reversal of Loftis's conviction, but the sentencing errors described in grounds III and V required a sentence reduction to thirty (30) years imprisonment; and 8) the trial court did not abuse its discretion in ordering Loftis's sentences to run consecutively. Dkt. No. 57-3 at 1-5. The OCCA affirmed the judgment of the trial court, but modified Loftis's sentence from forty (40) to thirty (30) years imprisonment due to the trial court errors regarding use of prior convictions to set sentence and the improper statements of the prosecutor in closing argument. Dkt. No. 57-3 at 5. On March 2, 2011, the trial court issued a modified judgment and sentence to reflect the reduction of Loftis's sentence by the OCCA. *See* Dkt. 57-5 at ¶ 10.

On December 5, 2011, Loftis filed a *pro se* Application for Post-Conviction Relief in the trial court, pursuant to Okla. Stat. tit. 22, § 1080, raising the following grounds for relief:

I.    Loftis received ineffective assistance of trial counsel;

II.   The trial court committed reversible error in ordering Loftis to appear just before trial for a hearing to determine whether he wanted to represent himself;

III.  Loftis received ineffective assistance of appellate counsel;

Dkt. No. 57-4.

On April 12, 2012, after approximately fifty (50) days without action by the trial court, Loftis filed an application for writ of mandamus in the OCCA, seeking an order directing the trial court to rule on his application for post-conviction relief.  Dkt. 11-4 at 1.  On May 20, 2012, the OCCA issued an order directing the trial court to respond to Loftis's application within thirty (30) days.  On July 3, 2012, Loftis filed a second writ of mandamus in the OCCA because he had not yet received a ruling by the trial court.  On July 6, 2012, Loftis was informed by mail authorities at his facility that he had received legal mail, which would be delivered to him on July 9, 2012.  The trial court had entered its order denying his application for post-conviction relief on June 22, 2012.  Based on the July 9, 2012, date of receipt, Loftis was unable to meet the ten (10) day statutory limitation to appeal the denial of his application.  *See* Dkt. 11-4 at 2.

In denying post-conviction relief, the trial court found that Loftis could and should have raised issues I (ineffective assistance of trial counsel) and II (waiver of counsel) in his direct appeal.  By failing to raise them on direct appeal or to provide an explanation for his failure to do so, Loftis had waived the claims.  Regarding the ineffective assistance of appellate counsel claim, the trial court determined that Loftis's argument that his attorney on appeal should have raised the ineffective assistance of trial counsel claim in the direct appeal was insufficient to state a claim that his appellate counsel was ineffective.  The trial court found that Loftis had not overcome the

strong presumption that appellate counsel's conduct "fell within the wide range of reasonable professional assistance."  Dkt. 57-5.

On July 17, 2012, Loftis filed a motion for leave to proceed out-of-time the denial of post-conviction relief.  On October 26, 2012, the trial court issued an order outlining the procedural facts up to that point.  The trial court stated that Loftis's request for an untimely appeal was dismissed as moot by the OCCA.  On July 27, 2012, Loftis filed in the trial court a motion requesting an order directing the state to respond.  On September 20, 2012, Loftis filed an application for writ of mandamus in the OCCA.  On September 27, 2012, the OCCA directed a response.  The trial court ordered the following:

1.  The State of Oklahoma need not respond to Loftis's motion requesting the State to respond; and

2.  Loftis is granted ten (10) days from the date of the order to file an appeal out-of-time.

Dkt. 11-5 at 2-3.

Loftis filed a handwritten notice of appeal on November 5, 2012.  Dkt. 11-6.  He filed his appeal brief in the OCCA on November 20, 2012.  Dkt. 11-7.  In a November 15, 2013, order, the OCCA denied Loftis's attempt to appeal the trial court's June 22, 2012, order denying post-conviction relief.  Dkt. 11-8 at 4-5.

**PROCEEDINGS IN FEDERAL COURT**

Loftis filed a Petition for Writ of Habeas Corpus in this Court on January 27, 2014.  He raised the following grounds for relief:

I.      Absolute exclusion of the defense witnesses was unwarranted and denied Mr. Loftis of a meaningful opportunity to present a complete defense;

II.     Loftis represented himself at trial without the trial court determining whether he was competent to do so, or that his decision to represent himself was voluntary;

6

III.    The trial court erred by permitting the jury to enhance punishment with two prior convictions which were part of the same transaction;

IV.    Because the written second stage jury instructions were missing from the district court file, and were not part of the record on appeal, Loftis was deprived of his right to fully appeal the second stage of his trial, therefore his sentences must be modified;

V.    Prosecutorial misconduct during closing arguments deprived Loftis of a fair trial;

VI.    The evidence presented at trial was insufficient to support the conviction for possession of cocaine, as there was insufficient proof of possession;

VII.    Loftis should be granted relief based upon cumulative error;

VIII.    The trial court erred when ordering Loftis's felony and misdemeanor sentences to run consecutively;

IX.    Loftis was deprived of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel during the pretrial phase of his criminal proceedings;

X.    The trial court erred in ordering Loftis to appear just minutes before trial for a hearing to determine if he wanted to represent himself, predicated on *ex parte* advice of defense counsel, where the record is void of any affirmative showing that such a request had been made by Petitioner prior to the hearing; and the trial court did not explain to Loftis that by representing himself, he waived any argument of competent counsel as a basis for appeal; and

XI.    Loftis was denied effective assistance of appellate counsel when counsel failed to raise Grounds IX and X in the direct appeal and constituting cause to excuse the procedural default.

Dkt. 1.[4]  On April 11, 2014, the State of Oklahoma filed a Motion to Dismiss the Petition as Time

Barred, arguing that Loftis did not file his habeas petition within the one-year period (plus ninety

(90) days in which he could have sought a writ of certiorari in the United States Supreme Court)

as contemplated under 28 U.S.C. § 2244(d)(1).   Respondent argued that statutory tolling

contemplated under 28 U.S.C. § 2244(d)(2), which allows for tolling of the one-year period during

---

[4] In his Petition for Writ of Habeas Corpus Loftis identified the last three claims as claims 1, 2, and 3 arising from his application for post-conviction relief.  The Court renumbered the issues as I – XI.  Dkt. 49.

the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment of claims is pending" in state court, did not apply because his attempt to seek leave to appeal out of time was denied by the OCCA.  Thus, his application for post-conviction relief was not "properly filed" under the statute.  Respondent further argued that Loftis was not entitled to equitable tolling because his situation did not present extraordinary circumstances required for equitable tolling to apply.  Dkt. 11.

On March 12, 2015, this Court issued an order granting Respondent's Motion to Dismiss the action as untimely, finding that Loftis had not met the standards for equitable tolling of the time in which to file his petition for writ of habeas corpus in federal court.  Dkt. 21.  On March 19, 2015, Loftis filed a Notice of Appeal.  Dkt. 23.  This Court granted Loftis leave to proceed *in forma pauperis* on appeal.  Dkt. 28.

On February 20, 2016, the Tenth Circuit Court of Appeals reversed this Court's dismissal of Loftis's habeas petition as time-barred and remanded the case for further proceedings in accordance with the Tenth Circuit's opinion.  The appellate court reasoned:

> In sum, Petitioner made reasonable, diligent efforts to comply with state law under the unique circumstances he faced, and the state district court "led [him] to believe that he . . . had done all that [wa]s required under the circumstances by granting his request for an extension of time to file his appeal, *Burger*, 317 F.3d at 1142.  The record clearly shows that Petitioner did not sleep on his federal rights, but rather diligently pursued his habeas claims through a state process that he reasonably believed to be sufficient.  *See id.*  Thus, as in *Burger*, we conclude that the district court abused its discretion in denying Petitioner's request for equitable tolling of the statute of limitations in this case.
>
> We accordingly REVERSE the district court's dismissal of Petitioner's habeas petition as time-barred and REMAND for further proceedings in accordance with this opinion.

Dkt. 32 at 16.  *Loftis v. Chrisman*, 812 F.3d 1268, 1276 (10th Cir. 2016).

In light of the Tenth Circuit's remand, this Court issued an order on July 6, 2016, directing the State of Oklahoma to file a response to Loftis's original habeas petition within 30 days. Dkt. 37. On September 1, 2016, the State filed a Motion to Dismiss for Failure to Fully Exhaust State Court Remedies, arguing that because the OCCA never ruled on Grounds IX, X, and XI of Loftis's petition, he had presented an improper mixed petition subject to dismissal. The State represented, however, no objection to the Court allowing Loftis to amend his petition deleting the unexhausted claims and proceeding with the exhausted claims, or to holding the case in abeyance to allow Loftis to fully exhaust his remedies in state court. Dkt. 42.

Based on guidance from *Rhines v. Weber*, 544 U.S. 269 (2005) and *Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009), on August 21, 2017, this Court issued an order denying Respondent's Motion to Dismiss [Dkt. 41], staying the action, and holding it in abeyance to allow Loftis to exhaust his remedies in state court. Dkt. 49.

SUBSEQUENT PROCEEDINGS IN STATE COURT

On August 31, 2017, Loftis filed a Notice of Post-Conviction Appeal in the Oklahoma trial court, and on September 21, 2017, he filed a Request for the Court to Recommend that Appeal Out-of-Time Be Granted By the OCCA. *Loftis v. State of Oklahoma*, Case No. CF-2009-112 (Carter County Dist. Ct. filed August 31 and September 21, 2017).[5] On January 16, 2018, the trial court issued an order recommending, in light of the Tenth Circuit's opinion, that Loftis be allowed to appeal the denial of post-conviction relief to the OCCA. *Id.* Loftis appealed. *Loftis v. State of Oklahoma*, Case No. PC-2018-152 (Okla. Crim. App. filed February 9, 2018).

On July 20, 2018, he OCCA affirmed the trial court's denial of post-conviction relief:

---

[5] The Court takes judicial notice of the public records of the Oklahoma State Courts Network at http://www.oscn.net. *See Pace v. Addison*, No. Civ-14-0750-HE, 2014 WL 5780744, at *1 n. 1 (W.D. Okla. Nov. 5, 2014).

Petitioner has failed to establish entitlement to any relief in a post-conviction proceeding.  Post-conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their judgments and sentences.  *Logan v. State*, 2013 OK CR 2, ¶ 3, 293 P.3d 969, 973.  Issues that were previously raised and ruled upon by this Court are procedurally barred from further review under the doctrine of res judicata; issues that were not raised previously on direct appeal, but which could have been raised, are waived for further review. 22 O.S. 2011, § 1086; *Logan*, *supra*.  Such issues may not be the basis of an application for post-conviction relief, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in prior proceedings. Id.  With the exception of his claim of ineffective assistance of appellate counsel, all of the issues Petitioner asserts in this post-conviction proceeding, including his claims of ineffective trial counsel, either were or could have been raised and adequately addressed in his direct appeal.

Dkt. No. 57-7 at 2-3.   On the ineffective assistance of appellate counsel issue, the OCCA determined that "none of Petitioner's allegations of deficient performance actually demonstrate objectively unreasonable conduct on the part of his appellate counsel."  *Id.* at 4.  The OCCA further noted that Loftis's appellate counsel did raise meritorious issues on direct appeal that caused the OCCA to modify his sentence.  "Finally, Petitioner offers nothing, such as new evidence, which actually refutes or contradicts the evidence presented at his trial or which meets his burden of establishing that any of the errors allegedly committed by appellate counsel would have changed the result of his appeal."  *Id.* at 5-6.

SUBSEQUENT PROCEEDINGS IN FEDERAL COURT

On August 2, 2018, Loftis returned to federal court and filed a motion for appointment of counsel in which he notified the Court that the OCCA had affirmed the Oklahoma trial court's denial of post-conviction relief.  Dkt. 51.  On August 6, 2018, the Court ordered the State of Oklahoma to show cause within 30 days why Loftis's Petition for Writ of Habeas Corpus should not be granted and denied Loftis's request for appointment of counsel.  Dkt. 52.  On October 4, 2018, the State of Oklahoma filed a response to Loftis's habeas petition.  Dkt. 57.

DISCUSSION AND ANALYSIS

10

STANDARD OF REVIEW

Under 28 U.S.C. § 2254, federal district courts have jurisdiction to hear claims from state prisoners that their convictions were obtained in violation of the United States Constitution. A petition for writ of habeas corpus will be granted only if the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A habeas court will first analyze whether federal law "was clearly established by the Supreme Court at the time of the state court judgment." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). A state court's judgment is "contrary to" federal law where "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Id.* (citing *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004)). An unreasonable application of federal law occurs where the state court identifies the proper controlling legal principle but "unreasonably applies" the law to the facts of the defendant's case. *Id.* A state court's determination must be more than "merely wrong" or "clear error." *Shinn v. Kayer*, 141 S.Ct. 517, 523 (2020) (quoting *Virginia v. LeBlanc*, 137 S.Ct. 1726, 1728 (2017) (*per curiam*)). A habeas petitioner must demonstrate that the state court's decision "is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn*, 141 S.Ct. at 523 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

11

**GROUND II:  THE OCCA'S FINDING THAT LOFTIS KNOWINGLY AND VOLUNTARILY CHOSE TO REPRESENT HIMSELF AND WAS COMPETENT TO WAIVE HIS RIGHT TO COUNSEL IS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT.[6]**

In Ground II of the habeas petition Loftis claims that after the preliminary hearing, he began asking his attorney to file motions, but she would not return his calls or his letters.  He claims that the day before his trial date she met with him at the jail and informed him that if he insisted on going to trial she would not represent him.  Loftis stated that when his court-appointed attorney came to visit him at the jail the day prior to trial and advised him that she had viewed the video recording of the traffic stop and "was of the opinion there was no likelihood of a defense; and if Petitioner still wanted to go to trial, she would get off the case."  Dkt. 1 at 15-16.

Before trial, the trial judge conducted the following colloquy with Loftis:

| | |
|---|---|
| Court: | I am told informally by counsel for the Defendant that her client wishes to represent himself in the trial. |
| | Is that still your client's desire |
| Counsel: | Yes, Your Honor. |
| Court: | Have you discussed this with him? |
| Counsel: | Yes, Your Honor.  We have had a discussion about that and with the understanding that he knows that makes it his full responsibility to conduct this trial as though he is representing himself. |
| Court: | Is that what you want to do, Mr. Loftis, is represent yourself? |
| Loftis: | Mr. Walker, I don't see any other option.  I have to.  I mean, me and my attorney haven't met each other until yesterday. |
| Court: | That wouldn't – so the answer to my question is yes? |
| Loftis: | Yeah. |

---

[6] Several of the grounds raised in Loftis's habeas petition hinge on the Oklahoma courts' finding that his waiver of counsel at his trial was knowing and voluntary.  Accordingly, this Court will analyze this question first even though it means handling of the issues raised in the petition out of the order in which Loftis raised them.

Court:     You want to represent yourself at this trial?

Loftis:    Yeah, I have to.

Court:     If I allow you to represent yourself, Mr. Loftis –

Loftis:    Yes, sir.

Court:     - the entire burden to comply with the code of criminal procedure will be on you.

Loftis:    Uh-huh.

Court:     All of the responsibilities, all of the decisions will be your decisions.  And if you  make a mistake because of your lack of knowledge, that mistake is on you.  You can't later blame it on somebody else.

Loftis:    Uh-huh.

Court:     Do you understand that?

Loftis:    Yes, I do.

Court:     And the fact that you are not an attorney –

Loftis:    Yes.

Court:     - and don't know how to do something, again, will be on you.  I won't help you.  If I see you falling flat on your face, you'll just fall flat on your face.  And I can't give you advice on what to do or what not to do.  That will be your choice.

Loftis:    Will she be allowed to give me advice?

Court:     She can give you advice, but the decision will be yours.

Loftis:    Yes.

Court:     If you choose to ignore her advice, then you will choose to ignore her advice.  And if you get an hour into the trial and decide you don't know what you're doing, that's too bad.  You can't have your cake and eat it too.  If I withdraw her as your attorney, but retain her to advise you, you can't switch those roles in the middle of the trial.

Loftis:    Well, I was with the understanding that she was gonna be withdrawing, Your Honor.  I didn't – I wasn't with that understanding.

Court:     No, she – you can't have it both ways.

Loftis:    All right.

Court:      She's either going to be your lawyer or she's not going to be your lawyer.  I can appoint her to advise you, but she won't be your lawyer.  She won't stand up in front of the jury and make an argument.  She won't question any of the witnesses.

Loftis:     Uh-huh.

Court:      She won't question the jurors at the beginning of the trial.  You can't have – no, sir, you need to listen to me.

Loftis:     Okay, sir.

Court:      I'm the one that has to make the decision.

Loftis:     Okay.

Court:      You can't have it both ways.  If she's going to be your attorney, she is the one that will question the witnesses.  She is the one that will question the jurors.  She is the one that will make the arguments.  She is the one that will make the objections.  If she is not going to be your attorney but only your advisor, you will be the one that does all of that.

Loftis:     Uh-huh.  So you saying that if she advises me to object—

Court:      And you choose not to object, then that's too bad.

Loftis:     Okay.

Court:      Then you choose not to object.  If she chooses – if she advises you to not ask a witness questions and you decide to ask a witness questions—

Loftis:     Uh-huh.

Court:      -- that's your problem.  You got good advice and chose not to take it.

Loftis:     Okay.

Court:      So if you represent yourself, you will be representing yourself.  She will be sitting there strictly as an advisor.  She will not say a word during the course of the trial other than to you.  She won't say anything to me; she won't say anything to the witnesses, she won't say anything to the jury.  That will be all on you.

Loftis:     Okay.

Court:      Do you understand that?

Loftis:     Yes, I do.

14

Court:      And that's what you want to do?

Loftis:     I have no other choice.

Court:      No.  That's a yes or a no, sir.

Loftis:     Yes, I do.

Court:      Has anybody forced you or threatened you to get you to do this?

Loftis:     No.  I haven't seen anybody—

Court:      Has anybody done—has anybody done anything to get you to do this against your will?

Loftis:     Not against my will.  I just don't see any other choice but to.  I haven't seen my attorney until yesterday.

Court:      So no law enforcement, no policeman—

Loftis:     No, sir.

Court:      --no deputy sheriff, no DA investigator has put any pressure on you to get you to make this decision?

Loftis:     Make a decision to represent myself?

Court:      Yes.

Loftis:     No.  Huh-uh.  I just haven't seen anybody so I had to file my own motions.

Court:      Do you understand that if –

Loftis:     Yes, I do.

Court:      Do you understand that if I allow you to represent yourself, you can't later change your mind?

Loftis:     Okay.  Yes, sir.

Court:      It's a river of no returns.

Loftis:     Yes, sir.

Court:      It's a door that opens only one direction.

Loftis:     Yes, sir.

Court:      And once you walk through the door, you can't – you can't walk back.

Loftis:       Yes, sir.

Court:       Do you believe, Ms. Blackburn, that your client understands what he's getting himself into?

Counsel:     Yes, Your Honor, I do.

Court:       Okay.  I will allow you to represent yourself, Mr. Loftis.  The trial starts at nine o'clock.  I will need a list of your witnesses before nine o'clock.

Dkt. 57-9 at 2-8.

On direct appeal the OCCA held that Loftis chose to represent himself at his trial, and his choice was knowing and voluntary.  The OCCA further determined that Loftis was competent to waive his constitutional right to counsel.  Dkt. 57-3 at 2.

A criminal defendant has a right to represent himself in a criminal trial, so long as his waiver of counsel is knowing and voluntary.  *See Faretta v. California*, 422 U.S. 806, 835 (1975).  The Tenth Circuit held in *United States v. Silkwood*, that the trial judge must inquire and create a record confirming that a defendant's waiver of counsel is knowing and voluntary.  The inquiry must include a thorough review of the defendant's understanding of the charges against him, and the review must show that the defendant possesses knowledge showing "a broad understanding of the whole matter." 893 F.2d 245, 248 (10th Cir. 1989) (quoting *United States v. Padilla*, 809 F.2d 952, 956-57 (10th Cir. 1987)).  The trial judge must also confirm that a defendant is "fully informed of the risks of proceeding *pro se*."  *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991) (citing *Faretta*, 422 U.S. at 835).  Deficiencies in the trial judge's colloquy with a defendant do not require automatic reversal, so long as "surrounding facts and circumstances, including a [defendant's] background and conduct, demonstrate that [the defendant] actually understood his right to counsel and the difficulties of *pro se* representation and knowingly and intelligently waived his right to counsel." *Willie*, 941 F.2d at 1389.  The trial judge's determination should be made in view of all the circumstances of the case, "including the defendant's age and education, his

16

previous experience with criminal trials, and representation by counsel before trial." *United States v. Vann*, 776 F.3d 746, 763 (10th Cir. 2015). The satisfactory pretrial litigation conduct of a defendant may serve as a case-specific factor to demonstrate to a reviewing court a knowing and intelligent waiver. *See United States v. Hamett*, 961 F.3d 1249, 1260-61 (10th Cir. 2020) (citing *United States v. Hansen*, 929 F.3d 2138, 1262-63 (10th Cir. 2019)).

On habeas review, this Court cannot find that the OCCA's holding was contrary to or an unreasonable application of relevant federal law. The trial judge's colloquy with Loftis checks all the proverbial boxes as set forth by both the Supreme Court and the Tenth Circuit Court of Appeals for determining whether a waiver of counsel is knowing and voluntary. The trial judge explained at length the responsibilities and consequences of Loftis's choice to represent himself. Specifically, the judge informed Loftis that the responsibility of complying with the State of Oklahoma's code of criminal procedure would be entirely upon him, and he would be required to accept the consequences of any errors he made in conducting the trial. Loftis indicated he understood the responsibilities and consequences of his choice. Loftis asked the trial judge a few questions regarding the advice he would receive from standby counsel. The trial judge clarified standby counsel's role if Loftis chose to represent himself. The trial judge also confirmed that Loftis's waiver of counsel was not coerced or influenced by any outside party. Regarding other factors relevant to the inquiry (under *Vann* and *Hammett*) Loftis filed numerous cogent and relevant pretrial motions without assistance from counsel. Throughout the colloquy and later in the trial, Loftis was articulate and conducted himself professionally and respectfully. These facts further support his knowing and intelligent waiver of counsel.

Based on the caselaw regarding a defendant's choice to proceed *pro se* in a criminal trial, this Court finds that the OCCA's finding that Loftis's waiver of counsel was knowing and

voluntary was neither contrary to nor an unreasonable application of relevant federal law. Accordingly, Ground II of the Petition for Writ of Habeas Corpus is **DENIED**.

**GROUND I:  THE OCCA'S DECISION THAT THE TRIAL COURT'S ERROR IN DENYING LOFTIS'S REQUEST TO PRESENT WITNESSES ON HIS BEHALF WAS HARMLESS BEYOND A REASONABLE DOUBT IS NEITHER CONTRARY TO OR AN UNREASONABLE APPLICATION OF FEDERAL LAW.**

 In Ground I of the petition, Loftis claims that he gave his witness list to his court-appointed counsel, but she did not disclose it to the prosecution.  Loftis also states that his attorney failed to advise him that the State had filed a motion to exclude his witnesses.  So, when he tried to call them at trial, the judge excluded them.

A criminal defendant has a constitutional right "to a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)).   The right to present witnesses in his own defense is among the fundamental rights of an accused.  *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).   The OCCA held, citing *Chapman v. California*, 386 U.S. 18, 24 (1967) (harmless beyond a reasonable doubt standard), that any error arising out of the denial of defense witnesses was "harmless beyond a reasonable doubt."  Dkt. 57-3 at 2.

On habeas review of a state court's harmless error determination, a federal court must determine whether the error had "a substantial or injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993).  The state court's determination that a trial court error was harmless on habeas review is entitled to habeas relief only if that determination by the state appellate court was "objectively unreasonable." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2004).  The "substantial and injurious effect" standard announced in *Brecht* applies regardless of whether the state appellate court reviewed the error for harmlessness. *Fry v.*

*Piller*, 551 U.S. 112, 121-22 (2007).  "A substantial and injurious effect exists when the court holds at least a 'grave doubt' about the effect of the error on the jury's verdict."  *Douglas v. Workman*, 560 F.3d 1156, 1171 (10ᵗʰ Cir. 2009).  *See O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) ("When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless.")

The OCCA held "that any error in the trial court's ruling denying Appellant the right to present witnesses on his behalf can be found in this case to have been harmless beyond a reasonable doubt."  Dkt. 57-3 at 2.  The OCCA did not elaborate further.[7]

Although the OCCA did not elaborate on the merits of the issue, this Court finds that the error complained of was harmless because it did not have a substantial or injurious effect or influence in determining the jury's verdict.  The evidence against Loftis was overwhelming.  The State presented the testimony of Officer Woolly, who testified that Loftis was driving recklessly, and at a high rate of speed, confirming a citizen report.  Woolly followed the truck, turning on his police lights.  The car slowed to a stop.  Woolly thought the truck was stopping because of the activation of his lights, but then the truck started up again, and Woolly followed.  After Loftis stopped the truck, and Corporal Woolly was able to secure him (with assistance from other officers), Woolly conducted an inventory of the truck.  He discovered two packages of what he

---

[7] On this issue, Judge Smith, a judge of the appellate panel of the OCCA, specifically concurred, but wrote separately the following:

> I concur with the Court's decision.  I write separately to emphasize to trial courts the importance of allowing a defendant to present witnesses.  Where, as here, the defendant provided the notice before trial and appeared *pro se*, prohibiting him from calling any witnesses was too harsh a sanction.

Dkt. 57-3 at 6.

believed to be crack cocaine inside the vehicle. The OSBI confirmed through lab testing that the packages contained cocaine. The chase, stop, and inventory were video recorded from Officer Woolly's dashboard camera. That video recording was played for the jury. Dkt. 58-2 at156-160.

At the close of the State's case, Loftis, representing himself, requested to call witnesses for his defense. The State of Oklahoma objected as Loftis had not complied with discovery deadlines and had not provided a summary of the testimony expected of the defense witnesses. The State argued that allowing the defense witnesses to testify was unfair and prejudicial. The trial judge sustained the objection and excluded Loftis from calling any witnesses that the State had not been notified of.

As discussed above in relation to Ground II of the petition, the trial judge did inform Loftis specifically that he would be required to follow all the court rules and deadlines and rules of criminal procedure, even if he was not well-versed in them. The trial judge stated, "if you make a mistake because of your lack of knowledge, that mistake is on you." Loftis indicated he understood. Loftis stated that his court-appointed attorney advised him that she recommended that he not go to trial because the video recording left him without a viable defense. This admission, from his petition, informs many other of Loftis's statements and places them in context. Loftis insisted on going to trial against the advice of his counsel. The trial judge specifically informed Loftis that he would be expected to comply with court rules. Although denial of any defense witnesses is an objectively harsh sanction, it was not contrary to or an unreasonable application of federal law, particularly given the Supreme Court's harmless error jurisprudence. Based on the strong evidence against him, the denial of witnesses did not have a substantial or injurious effect on the jury's verdict. Accordingly, Ground I of the petition is **DENIED**.

**GROUNDS III AND IV, BOTH BASED ON STATE LAW, DO NOT PRESENT CONSTITUTIONAL CLAIMS AND THEREFORE ARE NOT COGNIZABLE IN A FEDERAL HABEAS CORPUS ACTION.**

Loftis claims in Ground III of the habeas petition that the trial court erred in permitting the jury to enhance his punishment based on two prior convictions that were part of the same transaction, causing the jury to oversentence him. Dkt. 1 at 8. The OCCA agreed with Loftis, finding "that the trial court abused its discretion in allowing both 1998 convictions to be considered by the jury for purposes of enhancement." Dkt. 57-3 at 2-3. The OCCA remanded the case for reduction of Loftis's sentence to thirty years imprisonment.

In Ground IV of the petition, Loftis claims that the trial court failed to include second-stage jury instructions from the record on appeal, thus depriving him of his right to "fully appeal" the sentencing phase of the trial. Dkt. 1 at 10. The OCCA determined that "the certified transcript of the trial court's reading of the same rendered this error harmless beyond a reasonable doubt as Appellant had an adequate record from which to base his appeal of the second stage of trial." Dkt. 57-3 at 3.

"Federal habeas relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). In reviewing a federal habeas petition, the Court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68; *see also Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000) ("claims of state law violations are not cognizable in a federal habeas action."). In interpreting the Supreme Court jurisprudence, the Tenth Circuit has accorded "wide discretion" to state trial courts in sentencing matters, finding generally such challenges are not cognizable on habeas review unless a sentence is imposed "outside the statutory limits" or otherwise "unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *see also United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence

within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.").

Neither Ground III nor Ground IV states a constitutional claim cognizable on habeas review.  Ground III, a sentencing issue, is clearly within the purview of the state courts and the sentencing schemes developed by the state legislature.  The fact that the OCCA found error in sentencing and reversed and remanded the case for resentencing Loftis to a shorter sentence demonstrates the state court was capable of correcting its own sentencing errors.  Moreover, the OCCA's remand belies any challenge that Loftis's sentence was outside the statutory limits or otherwise unauthorized by law.

As to Ground IV, the claim that the trial court did not provide a full record on appeal, raises no claim of constitutional dimension.  The OCCA held that the error was harmless beyond a reasonable doubt because the jury instructions at issue were indeed read into and were thus part of the record on appeal.  Accordingly, Grounds III and IV of the Petition for Writ of Habeas Corpus are **DENIED**.

**GROUND V:  THE PROSECUTORIAL MISCONDUCT ALLEGED BY LOFTIS DOES NOT RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION.**

In Ground V of his petition, Loftis claims that improper prosecutorial comments during closing argument deprived him of a fair trial.  Dkt. 1 at 11.  The OCCA held that "the prosecutor's closing argument improperly and unmistakably called to the jury's attention that Appellant did not serve his full sentence on his prior conviction."  The OCCA further held that the prosecutor's comments constituted "plain error which affected the jury's decision in sentencing."  Dkt. 57-3 at 3-4.  Based on this error and the jury enhancement errors raised in Ground III, the OCCA remanded the case for resentencing from 40 to 30 years imprisonment.  Dkt. 57-3 at 4.

Improper prosecutorial comments rise to the level of a constitutional violation only when the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). In reviewing claims of improper remarks by a prosecutor, a court sitting in habeas is directed to look at the "totality of the circumstances" in which the comments were made, *Smallwood v. Gibson*, 191 F.3d 1257, 1276 (10th Cir. 1999), and to view the comments "within the context of the trial as a whole," *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

*Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (quoting *Hopkinson v. Shillinger*, 866 F.2d 1185, 1210 (10th Cir. 1989)).

A prosecutor is granted a "reasonable amount of latitude in drawing inferences from the evidence during closing summation." *Duvall*, 139 F.3d at 795. Even where improper comments are made, they take on constitutional dimension only when they are so egregious as to render the trial fundamentally unfair. *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999); *see also Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002).

Here, the OCCA's reversal was an appropriate remedy for what the OCCA found to be improper comments regarding Loftis's previous convictions. To receive habeas relief, Loftis would have to show that the comments were so egregious that they rendered the trial fundamentally unfair. Loftis has made no such showing.

Furthermore, the Court finds that Loftis's claim does not state a constitutional violation. The OCCA did not identify a constitutional error.  They identified, and remedied, a sentencing error based on state law.  As such, Loftis's claim is not cognizable on habeas review without a showing that the error violated a constitutional right.  Accordingly, Ground V of the habeas petition is **DENIED**.

**GROUND VI:  SUFFICIENT EVIDENCE SUPPORTED LOFTIS'S CONVICTION FOR DRUG POSSESSION.**

Loftis claims in Ground VI of the petition that insufficient evidence supported his conviction for possession of cocaine.  A habeas petitioner is entitled to relief for insufficient evidence if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  A habeas court should not make its determination based on its own evaluation of the evidence, but whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  This inquiry is an objective one, meaning a federal court sitting in habeas may overturn a state court decision rejecting a challenge to the sufficiency of the evidence only where the state court decision was "objectively unreasonable," *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)), or "so insupportable as to fall below the threshold of bare rationality," *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

The *Jackson* standard "respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial."  *Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319).  Much deference is given to the finder(s) of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  In addition to the deference due the

trier of fact, the high court notes that the "nature" of a constitutional sufficiency review by a habeas court is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992). A habeas petitioner claiming insufficient evidence "faces a high hurdle" under the *Jackson* standard. *Patton v. Mullin*, 425 F.3d 788, 796 (10th Cir. 2005).

There is no support in the record for Loftis's factual claim, nor is there support for a constitutional violation regarding a lack of sufficient evidence. As stated above, the evidence against Loftis was overwhelming. Police stopped him for erratic driving and failure to yield to the police. An inventory search of the truck he was driving found two packages of what the officers suspected to be crack cocaine. Field testing showed the substance was cocaine. Lab testing at the OSBI confirmed it was crack cocaine. The chain of custody of the evidence was a focus of testimony at trial. Loftis cross-examined the witnesses at length. The issue was well-presented to the jury by both sides. Furthermore, the overwhelming evidence submitted by the prosecution was sufficient to support a guilty finding. The OCCA found that the evidence presented at trial was sufficient to support Loftis's conviction of possession of a controlled dangerous substance beyond a reasonable doubt. Based on the foregoing, this Court cannot find that the OCCA's determination was contrary to or an unreasonable application of federal law. As such, Ground VI of Loftis's petition is **DENIED**.

**GROUND VII: THE AGGREGATION OF NON-ERRORS DOES NOT CONSTITUTE CUMULATIVE ERROR.**

In Ground VII of the petition, Loftis argues that the effect of the harmless errors, taken together, equal a constitutional violation. This Court disagrees. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."

*Smith v. Duckworth*, 824 F.3d 1233, 1255 (10th Cir. 2016) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003)).

Based on the relevant law, Loftis's cumulative error claim can be dismissed easily.  On each count of the petition, this Court determined that the OCCA's conclusions were not contrary to or unreasonable applications of relevant federal law.  The Court determined Loftis's claims were without merit on habeas review, did not raise claims of constitutional dimension, or were procedurally defaulted.  Notably, where the state court found error, it reversed and remanded the case for resentencing.  The OCCA ultimately reduced Loftis's sentence as he requested in his direct appeal.  Because none of Loftis's claims raised meritorious constitutional claims, there is no cumulative error.  *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009) ("The cumulative-error analysis applies when there are two or more actual errors.  It does not apply, however, to the cumulative effect of non-errors.")  Count VII of Loftis's habeas petition is therefore **DENIED**.

**GROUND VIII:  LOFTIS'S CLAIM OF TRIAL COURT ERROR IN ORDERING HIS SENTENCES TO RUN CONSECUTIVELY DOES NOT STATE A CLAIM COGNIZABLE ON HABEAS REVIEW.**

Loftis claims in Ground VIII that the trial court erred in ordering his sentences to run concurrently.  The Supreme Court recognizes the longstanding tradition of allowing state legislatures to make and implement policy decisions in sentencing.  *See Ewing v. California*, 538 U.S. 11, 25 (2003) ("Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.").  This deference to legislative policy choices "finds a corollary in the principal that the Constitution 'does not mandate adoption of any one penological theory.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991)).  The Supreme Court holds the Eighth Amendment does not require strict proportionality between crime and sentence.  "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*,

538 U.S. at 23 (quoting *Harmelin*, 501 U.S. at 1001).   In interpreting the Supreme Court jurisprudence, the Tenth Circuit has accorded "wide discretion" to state trial courts in sentencing matters, finding generally such challenges are not cognizable on habeas review unless a sentence is imposed "outside the statutory limits" or otherwise "unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th  Cir. 2000); *see also United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.").

The OCCA affirmed the trial judge's decision to order Loftis's sentence for felony-drug possession to run concurrently to the misdemeanor offenses.   As discussed in resolution of Grounds III and IV, *supra*, sentencing errors that do not exceed statutory maximums or are grossly disproportionate to the crime do not rise to the level of a constitutional violation.   Accordingly, Loftis's complaints about his sentences running consecutively do not raise a claim of constitutional magnitude and are therefore not cognizable on habeas review.   Ground VIII of the habeas petition is thus **DENIED**.

### GROUND XI:  THE DETERMINATION BY THE OCCA THAT LOFTIS'S APPELLATE COUNSEL WAS NOT INEFFECTIVE IS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF RELEVANT FEDERAL LAW.

In Ground XI of the habeas petition, Loftis claims that his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel and his *pro se* status at trial on direct appeal.   In the appeal of the denial of post-conviction relief, the OCCA found no merit to Loftis's ineffective assistance of appellate counsel claims because Loftis had not demonstrated appellate counsel's objectively unreasonable deficient performance.   The OCCA first noted that Loftis's attorney did in fact raise the *pro se* representation question on direct appeal and the OCCA determined that his waiver of counsel was knowing and voluntary.   The OCCA on appeal of the

post-conviction relief determined that Loftis's claim that he never technically asked to proceed *pro se* not dissimilar enough to show that it was not properly raised on direct appeal.  Dkt. 57-7 at 4-6.

A habeas court reviews ineffective assistance of appellate counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that proper standard for evaluating claims of ineffective assistance of appellate counsel is that announced in *Strickland*).  To succeed on a claim that appellate counsel was unconstitutionally ineffective, a defendant must demonstrate his attorney "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Robbins*, 528 U.S. at 285.  In addition to demonstrating appellate counsel's objective failure, a defendant must also show that he was prejudiced by counsel's errors, meaning he must demonstrate that had counsel not erred, he "would have prevailed on appeal." *Id.* at 285-86.  *See also Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014).  "[A]n ineffective assistance of appellate counsel claim lacks merit if the petitioner argues that appellate counsel should have asserted *meritless* ineffective assistance of trial counsel claims." *Harmon v. Sharp*, 936 F.3d 1044, 1063 (10th Cir. 2019) (citing *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 746-47 (10th Cir. 2016)).  On habeas review, a court faced with claims that appellate counsel was ineffective for failing to raise a claim on direct appeal must determine whether the omitted issue has merit.  "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (citing *Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998) (other citations omitted)).

Appellate counsel is not required to raise every potential cognizable issue to provide constitutionally effective assistance.  A defendant does not have a "constitutional right to compel

appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court recognizes that an effective appellate attorney "winnow[s] out weaker arguments on appeal and focus[es] on one central issue if possible, or at most only a few key issues," and cautions that "a brief that raises every colorable issue runs the risk of burying good arguments." *Id.* at 751-52.  To require appellate counsel to "raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Id.* at 754.  *See also Smith v. Murray*, 477 U.S. 527, 536 (1986) ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail far from being evidence of incompetence, is the hallmark of effective appellate advocacy.").  Appellate counsel "is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).

Appellate counsel did raise the issue of proceeding *pro se* in the direct appeal, as the OCCA acknowledged.  This Court found, *supra*, that Loftis knowingly and voluntarily waived his right to counsel.  Thus, it cannot serve as the basis of an ineffective assistance of appellate counsel claim because he did not demonstrate deficient performance under *Strickland*.  Nor can Loftis show that but for appellate counsel's alleged errors that the outcome of his appeal would have been different.  Notably, two of the issues appellate counsel raised on direct appeal were remedied by the OCCA's reduction of Loftis's sentence.  The success of appellate counsel's advocacy belies the claim that such advocacy was ineffective.  Accordingly, Ground XI of Loftis's Petition for Writ of Habeas Corpus is **DENIED**.

**GROUNDS IX AND X OF THE PETITION ARE PROCEDURALLY DEFAULTED, AND LOFTIS CANNOT OVERCOME THE DEFAULT.**

In Ground IX of the habeas petition Loftis claims that he received ineffective assistance of counsel in pretrial proceedings.  In Ground X, Loftis claims errors regarding his waiver of counsel.  On appeal of the trial court's denial of Loftis's petition for post-conviction relief, the OCCA found that Loftis had waived both claims, either by *res judicata* (issue was raised and adjudicated on direct appeal) or by failing to raise these issues on direct appeal.

Exhaustion is a threshold issue in a habeas case.  Under the federal statute, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  The doctrine serves to avoid a federal court's involvement in overturning a state court conviction before the state has an opportunity to address and correct a constitutional violation.  *See Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).  A habeas petitioner must "give state courts a fair opportunity to act on their claims."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  This requires that a prisoner give the state court "a full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  A prisoner must "fairly present" each claim raised in a petition for writ of habeas corpus to the courts in the state of conviction.  State courts are first granted the opportunity to "correct alleged violations" of constitutional magnitude before those claims may be heard in federal court.  *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (per curiam).  The purpose of habeas review is to "guard against extreme malfunctions in the state criminal justice systems" not as "a substitute for ordinary error correction" through appeal in state court.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

The doctrine of procedural default is an "important corollary" to the doctrine of exhaustion. *Davila*, 137 S.Ct. at 2064. Both doctrines serve to advance the interests of comity, finality, and federalism. *Id.*

> "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance."

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

Federal courts sitting in habeas will not review federal claims decided by a state court on procedural grounds "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. In application, the "independent and adequate state law ground" doctrine bars a federal court from addressing a prisoner's federal claims on the merits when "the prisoner has failed to meet a state procedural requirement." *Id.* at 730. A state procedural default is "independent" when it relies on state, not federal law. *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008) (citing *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)). A state procedural default is "adequate" if it is "firmly established and regularly followed." *Smith*, 550 F.3d at 1274 (citing *Clayton v. Gibson*, 199 F.3d 1162, 1171 (10th Cir. 1999)).

In Ground IX Loftis claims that he received ineffective assistance of trial counsel. In Ground X Loftis claims that he never asked the trial court to allow him to proceed without counsel. Instead, his court-appointed attorney, in an improper *ex parte* communication, told the trial judge that Loftis wanted to waive counsel and proceed *pro se*. Loftis further claims that the trial judge did not properly inform him that by representing himself, he waived any argument of ineffective assistance of counsel. The OCCA determined, however, that Loftis had waived both Grounds IX and X because they were either already adjudicated on the merits or could have been raised on

direct appeal but were not. The OCCA's finding that neither of these claims were properly raised and were therefore barred from review on the merits bars their review by this Court under the doctrine of procedural default.

Because Loftis's claims are procedurally barred, his only avenue for federal review of his claims would be to demonstrate "cause for the default and actual prejudice as a result," *Coleman*, 501 U.S. at 750, or to demonstrate that a failure to consider his claims "will result in a fundamental miscarriage of justice."[8] To demonstrate cause, a petitioner must show "an objective factor external to the defense" prevented compliance with the state's procedural rule. This occurs when the failure to comply "cannot fairly be attributed" to the prisoner. *Davila*, 137 S.Ct. at 2065.

As to cause, Loftis argues that his appellate counsel was ineffective in failing to raise the ineffectiveness of pretrial counsel in the direct appeal. This argument lacks merit on its face and equally as a basis for cause to overcome the procedural default. First, as discussed above, Loftis's appellate counsel raised eight issues on appeal. The OCCA found two of those issues meritorious and reduced his sentence. Thus, Loftis's argument that his appellate counsel was ineffective lacks merit because appellate counsel was effective in raising meritorious arguments.[9]

The second problem for Loftis is that he proceeded *pro se* in the trial court. Thus, errors that might have occurred at trial were consequences of his choice to proceed *pro se*, and therefore not the fault of his attorney. As discussed above, the trial judge explained this to Loftis in the

---

[8] The fundamental miscarriage of justice exception requires a showing of "actual innocence" which the high court defines as a showing "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995). This showing requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). A showing of "actual innocence" is exceedingly rare and "permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327).

[9] As discussed above regarding Ground XI of the habeas petition.

colloquy regarding his knowing and voluntary waiver of counsel.  Loftis filed a number of pretrial motions, also without counsel.  In the colloquy he indicated that his attorney would not file pretrial motions and refused to answer his calls or letters.  Loftis claims that his attorney did nothing in the pretrial stages.  But later in his habeas petition Loftis stated that his appointed counsel told him that due to the video recording of the traffic stop, he had no viable defense.  Loftis characterized this as counsel's refusal to assist him.  Yet, in light of the overwhelming evidence against him (discussed above), it becomes clear that counsel's advice was sound trial strategy.  It was her professional assessment that going to trial was ill advised because the prosecution would show a video recording of the traffic stop and discovery of cocaine.  It was legitimate advice to insist that Loftis not go to trial because he would likely be found guilty.  Loftis clearly did not agree with this advice, which ultimately resulted in his waiver of counsel and *pro se* status at trial.

Applying this to Loftis's argument that it was his appellate counsel's fault for not raising the ineffectiveness of his trial counsel on direct appeal, his argument falls flat, both on the merits and as cause for procedural default.  The fact that the OCCA reduced Loftis's sentence on direct appeal demonstrates the effectiveness of his appellate counsel.  Loftis's admission that his trial counsel advised him not to go to trial shows that her advice was within the realm of sound trial strategy.  Under *Strickland* such advice is not error remediable in habeas review.  Moreover, this Court finds nothing in the record to support a contention that Loftis was so prejudiced as to constitute a "fundamental miscarriage of justice," nor has he presented new evidence to support a claim that he is "actually innocent" of the offense.  Accordingly, Grounds IX and X of this Petition for Writ of Habeas Corpus are procedurally defaulted and, therefore, **DENIED**.

**CONCLUSION**

In summary, Petitioner Embry Jay Loftis has not shown that he is in custody in violation of the Constitution.  The Court therefore denies Loftis's Petition for Writ of Habeas Corpus [Dkt. No. 1].  Further, because Loftis has not shown that reasonable jurists would debate this Court's assessment of his constitutional claims or its determination that some of his claims are procedurally barred, the Court **DENIES** a certificate of appealability.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Michael J. Hunter in place of Tracy McCollum as party respondent;

2. The Petition for Writ of Habeas Corpus [Dkt. No. 1] is **DENIED**;

3. A certificate of appealability is **DENIED**; and

4. A separate judgment shall be entered in this matter.

DATED this 22nd day of July 2021.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE